UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:13-CR-49-GFVT-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| BRUCE MITCHELL, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 353), the Court considers reported violations of supervised release conditions by Defendant Bruce Mitchell. On January 31, 2017, the United States Probation Office ("USPO") petitioned Judge Van Tatenhove to commence revocation proceedings on the basis of three charged violations. The same day, Judge Van Tatenhove issued a summons and referred the matter to the undersigned. *Id*. On February 14, 2017, while Judge Van Tatenhove was out of the country, the USPO issued an addendum that contained two additional charges. Due to Judge Van Tatenhove's unavailability, these two charges have not yet been referred to the undersigned. Nevertheless, at the parties' request, the undersigned held a final revocation hearing with the expectation that, upon his return, Judge Van Tatenhove will issue a *nunc pro tunc* order referring to the undersigned the violations in the addendum.

Judge Van Tatenhove entered a judgment against Defendant in December 2014 following a guilty plea to violating 21 U.S.C. §§ 841(a)(1) & 846, participating in a conspiracy to manufacture methamphetamine. D.E. 320. Defendant received a prison sentence of 48 months,

1

followed by a three-year term of supervised release. *Id*. He began his first term of supervised release on July 12, 2016.

On January 31, 2017, the USPO submitted a "Supervised Release Violation Report" ("the Report") that initiated these proceedings. The Report charges three violations, the third of which has been dismissed.

The first is an alleged violation of the condition requiring that Defendant "refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." According to the Report, on January 13, 2017, Defendant submitted a urine specimen that tested positive for cocaine. When he was confronted about the results on January 23, Defendant "denied the use of cocaine or any illicit substances." This is a Grade C Violation.

Second, in relation to this unauthorized use of a controlled substance, the Report charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation #2 charges Defendant with conduct that would be a federal crime, that is, possession of cocaine, a Schedule II controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

The Report contains a third charged violation. At Defendant's initial appearance and preliminary hearing, the government made an oral motion to dismiss Violation #3, which was granted. D.E. 359.

2

On February 14, the day of Defendant's initial appearance on the violation allegations, the USPO issued an "Addendum to Supervised Release Violation Report" ("the Addendum"), which alleged two additional violations. According to the Addendum, "On January 30, 2017, Bruce Mitchell reported to the probation office and submitted to a urinalysis which produced positive results for cocaine." This fourth alleged violation is a Grade C violation.

For Violation #5, in relation to Violation #4's unauthorized use of a controlled substance, the Report charges Defendant with violating the condition that he not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation #5 charges Defendant with conduct that would be a federal crime, that is, possession of cocaine, a Schedule II controlled substance. Such conduct would be a Class E felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

The Court conducted an initial appearance and preliminary hearing pursuant to Rule 32.1 on February 14, 2017. D.E. 359. After the presentation of evidence, Defendant conceded probable cause regarding Violations # 1, 2, 4, and 5. *Id*. The government moved to dismiss Violation #3, and the motion was granted. *Id*. The United States moved for interim detention; Defendant argued for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on February 22, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 361. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations # 1, 2, 4, and 5. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for these four violations as described in the Report and

3

Addendum. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations # 1, 2, 4, and 5 under the standard of § 3583(e).

## I.

The Court has evaluated the entire record, including the Report and Addendum and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to participating in a conspiracy to manufacture methamphetamine, a Class C felony. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846; 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations # 1 and 4 and a Grade B violation with respect to Violations # 2 and 5. Given Defendant's criminal history category of I (the category at the time of the conviction) and a Grade B violation,[1] Defendant's range, under the

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

Revocation Table of Chapter 7, is four to ten months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's conviction, pursuant to 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that can be re-imposed.

## II.

At the final hearing, the government argued for revocation with four months of imprisonment, followed by two months at a halfway house, followed by supervised release to expire on July 11, 2019, which is the current date of expiration. Defense counsel "loosely" agreed with the government's recommendation and said he had "no objection" to it. However, because Defendant had a job that he did not want to lose, defense counsel requested a sentence of intermittent incarceration.

According to the government, although Defendant will lose his current job if he is incarcerated for four months, he "may have a good job lined up" that he can begin once he is transferred to a halfway house. Although Defendant was a "young man" with a "good job," the government argued, his felony conduct cannot be ignored. Regarding Defendant's history and characteristics, the government pointed out that he had a criminal history score of zero. Although his underlying criminal conduct (obtaining meth precursors and cooking meth) was concerning, there was nothing especially aggravating about it compared to similar defendants. The government noted that, in addition to his meth abuse, Defendant had "experimented" with cocaine in the past.

5

The government explained that it might not have sought revocation after the first positive urine test for cocaine, but that the second positive test "changed things." In light of the fact that he was caught using cocaine twice (and lied about it the first time), the government believed a mid-range sentence was appropriate, and that serving the final two months in a halfway house would give him some "structure on the back end" so he could get a new job and "re-acclimate."

The defense conceded that the government's recommendation was "fair." But imprisonment would be particularly "painful" because Defendant would lose his job. The defense thus requested an "intermittent sentence."

Defendant addressed the Court. He apologized to the Court and the Probation Officer for the lapse. He admitted he "slipped up." He stated he misled the Probation Officer because he was "embarrassed" to admit his cocaine use. He said he works really hard to keep what he has, and that he helped take care of his sister. He asked to serve the whole sentence in the halfway house.

### III.

At the outset, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession).

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The nature and circumstances of Defendant's underlying conviction for a methamphetamine manufacturing conspiracy are quite serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to his Presentence

6

Investigation Report, he was both a cook and a "smurf" who bought pseudoephedrine for making meth.

As to his history and characteristics, his criminal history category of I weighs in his favor. All of Defendant's criminal activity appears to be driven by his drug use. And, once again, drug use has gotten him in trouble. Although Defendant reports that he completed the RDAP program in prison, what he learned there did not prevent him from returning to cocaine. Also important is his dishonesty with his Probation Officer. Had he admitted his cocaine use, perhaps he could have gotten some help, avoided the second positive urinalysis, and been in a different situation today.

As to deterring criminal behavior and protecting the community, Defendant does have a low criminal history. However, in light of his prior conviction, all illegal drug use is a federal felony for him. Deterrence is warranted to avoid further dangerous criminal conduct.

The Court has considered any opportunities for providing education and treatment to the Defendant. Here, Defendant has already completed the RDAP program. Under the present circumstances, there is nothing better the Court can provide. Defendant needs to draw on what he learned in that program.

The need to avoid unwarranted sentencing disparities among defendants with similar records who have committed similar violations is usually addressed by the recommendation of a sentence within Defendant's Guidelines Range.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the

underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, Defendant breached the Court's trust by using an illegal drug on more than one occasion. He compounded this breach of trust by refusing to admit his drug use to the Probation Officer. His deception precludes the leniency sought by the defense. Defendant is warned that if he violates again, the penalty will increase.

For the reasons stated above, the Court finds that a the government's recommended penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court will recommend four months of incarceration, followed by two months in a halfway house. Upon release, Defendant should be placed on supervised release under the same conditions previously imposed, to expire on July 11, 2019.

### IV.

Based on the foregoing, the Court **RECOMMENDS** revocation with a term of imprisonment of four months, followed by two months in the halfway house, followed by supervised release to expire on July 11, 2019.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration,

*de novo*, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985).

This the 23rd day of February, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge